**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIE EDWARDS,

       Petitioner,

                           CASE NO. 2:09-CV-14135

v.                         HONORABLE GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

THOMAS BELL,

       Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

       Willie Edwards, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for armed robbery, M.C.L.A. 750.529; carrying a dangerous weapon with unlawful intent, M.C.L.A. 750.226; and being a fourth felony habitual offender, M.C.L.A. 769.12.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I.  Background

       Petitioner was convicted of the above charges following a jury trial in the Saginaw County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

       JC Penney loss prevention officers observed defendant take four pairs of

1

khaki pants from a store display, conceal them in a garbage bag, and leave the store with the merchandise without paying for it.  The officers followed defendant out of the store and, after identifying themselves as loss prevention personnel, asked defendant to return to the store. Defendant stopped and dropped the bag, then opened up a blue-handled Sheffield folding knife and pointed it at the officers. Defendant directed the officers to "stay back away from me or I'll cut you."  Although the knife contained both a knife blade and a razor blade part, one of the officers testified that it was the knife blade that was brandished.

Defendant thereafter left the garbage bag on the ground and ran across the street and into another store, where police officers found him in a bathroom. An unsheathed razor blade was found in defendant's pocket, and a blue-handled knife was found in a wastebasket in the bathroom.  At trial, defendant took the stand and admitted that he shoplifted the pants and that he brandished the blue-handled knife at the loss prevention officers in an attempt to escape.  It was generally argued by trial counsel, however, that defendant did not use the knife to accomplish the taking and, therefore, he was not guilty of armed robbery.

*People v. Edwards,* No. 267212, * 1 (Mich.Ct.App. March 13, 2007).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 479 Mich. 866, 735

N.W.2d 232 (2007).

Petitioner then filed a post-conviction motion for relief from judgment with the trial

court pursuant to M.C.R. 6.500, *et. Seq.,* which was denied. *People v. Edwards*, No. 05-

025985-FC (Saginaw County Circuit Court, June 30, 2008).  The Michigan appellate

courts denied petitioner leave to appeal. *People v. Edwards*, No. 287492 (Mich.Ct.App.

December 2, 2008); *lv. den.* 484 Mich. 867, 769 N.W.2d 660 (2009).

Petitioner seeks habeas relief on the following grounds:

I.  Appellate counsel denied defendant his Six[th] Amendment constitutional right to the effective assistance of counsel by counsel's failure to raise numerous meritorious claims on appeal, failure to raise these claims denied defendant a true and adverse right to his first appeal.

II. Defendant was denied his state and federal constitutional rights to effective assistance of counsel where counsel's cumulative error denied the

2

defendant a fair trial and true adversarial process.

III. It was unconstitutional for the defendant to be convicted of an indictment the defendant was never indicted on. Defendant is entitled to resentencing because he was erroneously sentenced as a fourth felony offender where the prosecutor used a conviction not attributable to defendant for enhancement purposes. The prosecutor's error caused Mr. Edwards to be sentenced on the basis of inaccurate information. Trial counsel and prior appellate counsel were ineffective in not raising this issue.

IV. Was it unconstitutional for the defendant to be convicted of an indictment the defendant was never indicted on.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000). An "unreasonable application" occurs when "a state court decision

3

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

4

AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  The procedural default issue.

Respondent contends that petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural

5

state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  This order, however, did not refer to subsection (D)(3) nor did it mention petitioner's failure to raise these claims on his direct appeal as the rationale for rejecting his post-conviction claims.  Because the Michigan Supreme Court's form order is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the petitioner's claims. *Id.*

The Michigan Court of Appeals rejected petitioner's post-conviction appeal "for lack of merit on the grounds presented" without mentioning M.C.R. 6.508(D).  The trial

6

court rejected petitioner's claims on the merits without mentioning M.C.R. 6.508(D)(3) or petitioner's failure to raise the claims on his direct appeal as the basis for rejecting these claims. Both the trial court and the Michigan Court of Appeals denied petitioner's claims on the merits and not based on the provisions of M.C.R. 6.508(D). Because the lower state courts adjudicated petitioner's claims on the merits, it is not clear that the Michigan Supreme Court's form order relied on the procedural bar of M.C.R. 6.508(D)(3) to deny petitioner relief. Because the last reasoned state court decisions rejected petitioner's claims on the merits, this Court concludes that petitioner's claims are not procedurally defaulted. *Guilmette*, 624 F. 3d 289, 292.

Moreover, petitioner alleges that his appellate counsel was ineffective for failing to raise his claims in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291.

7

**B.  The merits of petitioner's claims.**

The Court will discuss petitioner's four claims together because they are interrelated.  In his first claim, petitioner alleges that he was deprived of the effective assistance of appellate counsel.  In his second claim, petitioner alleges that he was deprived of the effective assistance of trial counsel.  In his third claim, petitioner alleges that he was improperly charged with being a fourth felony habitual offender.  In his fourth claim, petitioner contends that the trial judge improperly allowed the criminal information to be amended on the day of trial.  Because petitioner claims that trial and appellate counsel were both ineffective for failing to challenge the validity of the habitual offender charges and the amendment of the information, the Court will address these two issues together with petitioner's other ineffective assistance of counsel claims.

1.  Standard of Review.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second,

8

the defendant must show that such performance prejudiced his defense. *Id.*  To

demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just

conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting Richter,

131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on

the defendant who raises a claim of ineffective assistance of counsel, and not the

state, to show a reasonable probability that the result of the proceeding would have

been different, but for counsel's allegedly deficient performance. *See Wong v.

Belmontes*, 130 S. Ct. 383, 390-91 (2009).  The *Strickland* standard applies as well to

claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d

602, 617 (6th Cir. 2005).

      More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was incorrect

but whether that determination was unreasonable-a substantially higher threshold.'"

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*,

550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable.  This is different from asking

whether defense counsel's performance fell below *Strickland's* standard." *Harrington v.

Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing

9

*Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over six years ago and an appeal of right that took place almost five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

2.  The individual claims.[1]

a.  The substitution of counsel claim.

---

[1]  Petitioner does not clearly delineate all of his claims in the body of his brief but has attached a Sworn Affidavit, in which he brings numerous allegations of ineffective assistance of trial and appellate counsel.  Because petitioner is proceeding *pro se*, this Court assumes that he wishes to raise all of these claims before this Court.  Because some of the claims are duplicative, this Court will consolidate these claims when addressing them.

10

Petitioner first contends that he was deprived of the effective assistance of trial counsel due to a breakdown in the attorney-client relationship.

On the day scheduled for trial, petitioner's trial counsel brought a motion to withdraw as trial counsel.  At the hearing, petitioner indicated that he and his attorney "don't agree on certain things" and complained that his attorney refused to file a motion to quash the information on his behalf and failed to call certain witnesses whom petitioner alleged would testify that petitioner only intended to shoplift and not commit an armed robbery.  Petitioner's counsel responded that petitioner never provided him with the names and addresses of the witnesses, which prevented counsel from contacting them.  Counsel further noted that although petitioner wanted him to file a motion to quash the information, because of a change in the armed robbery and unarmed robbery statutes a few years prior to petitioner's trial, this motion would not be successful.  Counsel indicated that he had given a copy of the statutes to petitioner which indicated this change in the law.  Petitioner replied that he had given counsel the name of a witness, but that when counsel tried to contact this person, the witness refused to talk to him because he did not know who counsel was.  Petitioner indicated that counsel had informed him that his witnesses did not want to come to court, but petitioner claimed that the witnesses did not want to speak with counsel because they did not know who he was and thought that counsel was trying to trick them.   The judge denied the motion, noting that petitioner had rejected a plea offer and that trial was scheduled to begin that morning before another judge. (Motion Tr.10/4/2005,

11

pp. 3-8). [2]

The Sixth Amendment right to the assistance of counsel does not guarantee a

criminal defendant that he or she will be represented by a particular attorney. *Serra v.*

*Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(*citing Caplin &*

*Drysdale v. United States,* 491 U.S. 617, 624 (1989)). "A defendant is required to show

good cause for a request to substitute counsel and to do so in a timely manner." *See*

*United States v. Williams,* 176 F. 3d 301, 314 (6th Cir. 1999).  In determining whether a

court abuses its discretion in denying a motion for substitute counsel, a reviewing court

should consider the timeliness of the motion, the adequacy of the trial court's inquiry

into the defendant's complaint, whether the conflict between the attorney and the client

is so great that it resulted in a total lack of communication which prevented an

adequate defense, and a balancing of these factors with "the public's interest in the

prompt and efficient administration of justice." *Id. (citing United States v. Jennings*, 83

F. 3d 145, 148 (6th Cir. 1996)).

This Court first notes that petitioner's request for new counsel was untimely

because it was made on the day of trial.  Petitioner offered no reasons to the state

courts or to this Court why he did not bring his dissatisfaction with his counsel up to the

trial court earlier, particularly at a hearing on August 9, 2005, in which petitioner's

original trial date was adjourned.  The Sixth Circuit has noted that when "the granting of

the defendant's request [for a continuance to obtain new counsel] would almost

---

[2] There are two different transcripts for October 4, 2005.  The first transcript, which will be referred to as Mot. Tr. 10/4/2005, is the transcript for the motion to withdraw as counsel[This Court's Dkt. # 7-5(a duplicate was filed in Dkt. # 7-6)].  The trial transcript from October 4, 2005 will be referred to as Tr. 10/4/2005[This Court's Dkt. # 7-7].

12

certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 Fed.Appx. 830, 834 (6th Cir. 2008)(*quoting United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)); *See also United States v. Reevey,* 364 F. 3d 151, 157 (4th Cir. 2004)("a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances.'").  The Sixth Circuit has rejected similar requests as being untimely. *See U.S. v. Trujillo,* 376 F. 3d 593, 606-07 (6th Cir. 2004)(motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); *Jennings,* 83 F.3d at 148 (motion to continue to obtain new counsel untimely when it was made the day before trial).  In the present case, petitioner's request for new counsel on the day of trial was untimely, particularly where petitioner had opportunities prior to trial to bring his dissatisfaction with counsel to the attention of the trial court. *Whitfield,* 259 Fed. Appx. at 834.

Second, the state court judge sufficiently inquired into petitioner's allegations of ineffectiveness against counsel.  In light of the fact that there were "multiple lengthy discussions" with petitioner and his defense counsel about their alleged conflicts, there was no abuse of discretion in denying petitioner's request for new counsel. *See U.S. v. Vasquez*, 560 F. 3d 461, 467 (6th Cir. 2009).

Finally, petitioner is unable to show that he was prejudiced by the failure of the trial court to substitute counsel, in light of the fact that he received effective assistance of counsel at trial. *Vasquez,* 560 F. 3d at 468.  "The strained relationship" between petitioner and his attorney was not a "complete breakdown in communication" that prevented petitioner from receiving an adequate defense. *Id.*  Indeed, a review of the

13

record shows that counsel actively participated in the jury selection process, including making a number of peremptory challenges (Tr. 10/4/2005, pp. 43-53, 55-59, 66-81), made an opening statement (Tr. 10/5/2005, pp. 22-25), vigorously cross-examined the witnesses (*Id.,* pp. 48-55, 57-58, 67-69, 82-87, 102-110), put petitioner on the stand to testify (*Id.,* pp. 114-23) and made a closing argument which in which counsel argued that although petitioner stole items from the store, he did not intend to commit an armed robbery. (Tr. 10/6/2005, pp. 14-16).

Petitioner is not entitled to habeas relief on his first claim, because the state trial court's decision to refuse to permit petitioner to substitute counsel was not contrary to clearly established federal law as decided by the United States Supreme Court, so as to entitle petitioner to habeas relief. *See Ray v. Curtis,* 21 Fed. Appx. 333, 335 (6th Cir. 2001).

b.  The failure to call or investigate witnesses.

Petitioner next complains that trial counsel was ineffective for failing to call several witnesses whom he claims could have provided favorable testimony for petitioner.

The Court has reviewed the post-conviction applications for leave to appeal that petitioner filed with the Michigan Court of Appeals and the Michigan Supreme Court. [3] Petitioner failed to give names of the proposed witnesses that he claims trial counsel should have called at trial, nor did he attach any affidavits from these witnesses to his post-conviction appeal briefs.  Conclusory allegations of ineffective assistance of

---

[3]   See this Court's Dkt. ## 7-14, 7-15, 7-16.

14

counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his claim that counsel was ineffective for failing to call witnesses on his behalf, petitioner is not entitled to an evidentiary hearing on this ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has likewise failed to attach any offer of proof or any affidavits sworn by the proposed witnesses to his petition for writ of habeas corpus. Petitioner has thus offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007).

c. Failure to file a motion to quash the information.

Petitioner next contends that trial counsel was ineffective for failing to file a motion to quash the information concerning the armed robbery and carrying a dangerous weapon charges. Although petitioner does not offer any argument as to why the motion to quash the information should have been granted, petitioner attached to his application for leave to appeal to the Michigan Supreme Court a copy of a handwritten "motion to dismiss" that presumably is the motion that he wished his trial

15

counsel to file and argue on his behalf. [4]   Petitioner essentially argues that because he did not actually take the property in the presence of any person, he could not be guilty of armed robbery, even if he subsequently pointed a knife at one of the security personnel in order to effectuate his escape.  Petitioner further argues that he could not be found guilty of carrying a dangerous weapon with unlawful intent because the knife blade that he was carrying was not long enough under the statute to constitute a dangerous weapon and the razor blade on the knife was only a half inch long and thus could also not qualify as a dangerous weapon.

The testimony at the preliminary examination established that petitioner stole several pairs of pants from a store and that while being chased by store security personnel, petitioner removed a folding knife from his pocket and brandished it at them, threatening to use the knife if the men came any closer.   (Tr. 5/2/2005, pp. 4-9). Petitioner's use of a knife or razor blade against store security personnel after the pants had been taken was sufficient under Michigan law to support his armed robbery conviction, because the force was used to effectuate petitioner's escape after he had stolen the items.  Effective July 1, 2004, the Michigan Legislature amended both the armed robbery and unarmed robbery statutes. *See People v. Morson,* 471 Mich. 248, 265, n. 2, 685 N.W.2d 203 (2004)(Corrigan, J., concurring).  In pertinent part, the unarmed robbery statute has now been amended, to include the following definition:

> "As used in this section, 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."

---

[4]  *See* Dkt. # 7-13.

16

M.C.L.A. 750.530(2).

Michigan's armed robbery statute, M.C.L.A. 750.529, which petitioner was convicted under, states, in pertinent part:

> "A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon," ...is guilty of armed robbery.

By amending the robbery statutes, the Michigan Legislature sought to explicitly reinstate what is commonly known as the "transactional approach" to armed and unarmed robbery, under which force that it used after the initial larceny to effectuate flight or escape will be sufficient to establish the elements of robbery. *Morson,* 471 Mich. at 265, n. 2; *Turner v. Warren,* No. 2006 WL 1109300, * 3, n. 3 (E.D. Mich. April 26, 2006). The Michigan Court of Appeals has since held that force that is used after the theft in order to flee or escape is sufficient to establish the elements of armed robbery. *See People v. Passage*, 277 Mich.App 175, 178; 743 N.W. 2d 746 (2007)("[T]he use of any force against a person during the course of committing a larceny, which includes the period of flight, is sufficient under the statute[, and] '[f]orce' is nothing more than the exertion of strength and physical power."). The testimony from the preliminary examination was sufficient for the examining magistrate to bind petitioner over for trial on the armed robbery charge.

With respect to the weapon charge, petitioner raised on direct appeal a claim that the examining magistrate erred in binding him over for trial on the carrying a dangerous weapon with unlawful intent charge. Although the Michigan Court of

17

Appeals reviewed the claim for plain error, due to the fact that no motion to quash had been filed, the court nevertheless concluded that any failure to quash the information was harmless error in light of the fact that sufficient evidence had been presented at trial that petitioner carried a dangerous weapon with unlawful intent. The Michigan Court of Appeals specifically pointed to evidence that petitioner had been carrying a knife that contained both a knife blade and a razor blade part. The Michigan Court of Appeals concluded that a knife that contained both a knife blade and a razor blade portion qualified as a "dangerous or deadly weapon" within the meaning of M.C.L.A. 750.226. *Edwards,* Slip. Op. at * 2. The witness at the preliminary examination testified that the weapon was a "folding knife" that was about six inches in length when opened. (Tr. 5/2/2005, pp. 12-13).

In this case, there was sufficient evidence presented at the preliminary examination to bind petitioner over for trial on the armed robbery and carrying a dangerous weapon with unlawful intent charges. Accordingly, petitioner is unable to show that counsel was ineffective for failing to file a motion to quash the information. *See e.g. Dell v. Straub,* 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002)(counsel not ineffective for failing to object to the allegedly improper bindover of petitioner at the preliminary examination, when there was sufficient evidence presented at the examination to justify the bindover).

d. Failure to adequately advise petitioner about the plea bargain offer.

Petitioner next contends that he was prevented from accepting a plea bargain offer from the prosecutor, because his trial counsel was unaware of the new armed robbery statute mentioned above, which changed Michigan law by allowing a person

18

who uses force to escape from a theft to be convicted of armed robbery.  Petitioner contends that had his counsel known about the law and explained the law to petitioner, there is a great probability that petitioner would have accepted the prosecutor's plea bargain offer of no jail time and five years' probation.  Petitioner further claims that counsel misinformed petitioner that the prosecutor would not let him accept a guilty plea.

A habeas petitioner who claims that his trial counsel gave him gross misadvice about whether to accept or reject a plea offer must prove: (1) that his counsel's performance was objectively deficient, and (2) that but for his counsel's erroneous advice, there is a reasonable probability that he would have accepted the plea. *See Magana v. Hofbauer,* 263 F. 3d 542, 550 (6th Cir. 2001).  A habeas petitioner's testimony, however, by itself, would be subjective, self-serving, and insufficient to satisfy the *Strickland* standard for proving this type of claim. *Turner v. State of Tennessee*, 858 F. 2d 1201, 1206 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989).

As an initial matter, petitioner has failed to present any credible evidence that his attorney failed to adequately advise him about the plea offer and the consequences of going to trial, because petitioner's self-serving statements that he was not properly advised as to the benefits of taking the plea offer are insufficient to prove that counsel failed to properly advise him concerning whether or not he should plead guilty. *See Jackson v. U.S.,* 248 F. Supp. 2d 652, 655-56 (E.D. Mich. 2003).  Moreover, petitioner's allegations are belied and contradicted by the record.  At a pre-trial conference conducted on August 9, 2005 concerning an adjournment of trial, defense

19

counsel placed on the record that a plea offer had been made, in which petitioner would plead guilty to felonious assault, carrying a concealed weapon, and retail fraud, third-degree in exchange for dismissal of the armed robbery charge. Petitioner would also plead guilty to two counts of carrying a concealed weapons charges in a companion case. Petitioner would also plead guilty to being an habitual offender. As part of the plea agreement, petitioner would agree to serve a three year prison term. The agreement also called for the sentences from the two separate cases to be served concurrently. On the record, counsel asked petitioner if he had discussed the plea agreement with petitioner. Petitioner acknowledged that counsel had discussed the plea agreement with him. Petitioner further agreed that his counsel had advised him that if he was convicted of the separate criminal cases after trial, the court had the option of imposing consecutive sentences. Petitioner further indicated on the record that he was rejecting the plea agreement. In response to defense counsel's question, the prosecutor confirmed that the plea agreement as outlined on the record by defense counsel was an accurate reflection of the terms of the agreement. (Tr. 8/9/2005, pp. 2-4). There is nothing from this record to indicate that the prosecutor ever offered to agree to no jail time and probation in exchange for petitioner's plea. The record also clearly shows that petitioner was advised by defense counsel of the plea agreement that had been offered by the prosecutor and that petitioner had rejected the offer.

The credibility of petitioner's claim that counsel misinformed him that the prosecutor would not accept his plea of guilty is further undercut by petitioner's subsequent allegation discussed below that counsel never discussed trial strategy with petitioner other than persuade petitioner to accept a plea bargain. Clearly the latter

20

allegation is at odds with petitioner's claim that trial counsel misinformed him that the prosecutor would not accept a plea bargain.

Petitioner further claims that trial counsel was unaware of the changes in the armed robbery law and had not informed petitioner of these changes, and had he done so, petitioner would have pleaded guilty.  A criminal defense attorney's "complete ignorance of the relevant law under which his client was charged" which leads to gross misadvice to his client whether to accept a plea bargain can amount to ineffective assistance of counsel. *Magana,* 263 F. 3d at 550.  This Court notes that at the hearing on the motion to withdraw as attorney, petitioner complained that counsel refused to file a motion to quash the information that petitioner had wanted to have filed.  This motion, as discussed above, argued that petitioner could not be guilty of armed robbery because he only used force to effectuate his escape after the theft had been completed.  At the hearing, petitioner indicated that he had only been shoplifting.  In response to petitioner's complaint about counsel not filing a motion to quash, the following exchange occurred between the trial judge, counsel, and petitioner:

> MR. COWDRY [defense counsel]:  He said–he presented the– defense that– and he wanted a motion to quash the charges, I believe.  And because of the way that the law has been written, what was it, three, four years ago when the armed robbery statute and the unarmed robbery statute was changed, and I provided him with a copy of that statute, so he knows exactly what he–what we're up against.  Didn't I?
>
> THE DEFENDANT: Of course you did.
>
> THE COURT: You mean the motion to quash the information?
>
> MR. COWDRY: Yeah.
>
> (Motion Tr., 10/4/2005, pp. 3-4).

21

The prosecutor then elaborated that the facts established that petitioner had been shoplifting, but that when store security went to apprehend him, he pulled a knife out, which would amount to armed robbery. (*Id.,* at p. 4).

Within the context of this discussion, it is clear that defense counsel advised petitioner of the change in the armed robbery statute, in order to explain why a motion to quash would have been without merit, even providing petitioner with a copy of the law to review. Because petitioner was made aware of the changes in the law but chose to proceed to trial anyway, petitioner is unable to establish that counsel provided deficient advice in regards to accepting the plea.

e. Failure to challenge the habitual offender notice.

Petitioner next contends that trial counsel was ineffective for failing to challenge the supplemental information that charged petitioner with being a fourth felony habitual offender and that appellate counsel was ineffective for failing to challenge the adequacy of the habitual offender charge on direct appeal. In his independent third claim, petitioner also claims that he was improperly charged with being a fourth felony habitual offender, because the trial court relied on a 1979 possession of narcotics conviction that was not attributable to petitioner in sentencing him as a fourth felony habitual offender.

In rejecting petitioner's claim involving the habitual offender charge, the trial judge noted that the habitual offender notice that had been filed against petitioner listed six prior felony convictions that were attributable to him. The trial judge further observed that petitioner had offered no evidence that this prior conviction was somehow invalid. The trial judge noted that even if the 1979 conviction was invalid,

22

petitioner still had five prior felony convictions, more than the three prior felony convictions that were required to convict a defendant of being a fourth felony habitual offender under M.C.L.A. 769.12. *People v. Edwards,* No. 03-025985-FC, * 4 (Saginaw County Circuit Court, June 30, 2008).    Petitioner again alleges before this Court that the 1979 possession of narcotics conviction out of Windsor, Ontario was not a felony conviction and could not be used to charge him with being a fourth felony habitual offender.  Petitioner also appears to argue that a 1988 cases out of Harper Woods District Court for malicious destruction of property had been reversed.  Petitioner acknowledges, however, that he has a 1982 conviction out of the State of Mississippi for sale of marijuana, a 1985 conviction for larceny over $ 100.00, a 1975 conviction out of Montgomery, Alabama for robbery, and a 1992 conviction for malicious destruction of personal property.

Petitioner's third claim involving the application of Michigan's habitual offender laws is non-cognizable on habeas review, because it involves an application of state law. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008).  Petitioner would not be entitled to relief on his third claim.

With respect to his claim that counsel was ineffective for failing to challenge the fourth felony habitual offender charge at trial or on direct appeal, as the trial judge noted in rejecting petitioner's claim, the fourth felony habitual offender notice listed 6 prior felony convictions.  Even if petitioner is correct that the supplemental information contained two convictions that should not have been listed on the supplemental information, petitioner acknowledges he has four prior felony convictions, more than

23

the three prior convictions required to charge a defendant with being a fourth felony habitual offender. *See* M.C.L.A. 769.12(1). Because there were no viable grounds for challenging the habitual offender charges in this case, trial and appellate counsel were not ineffective for failing to challenge the viability of the habitual offender charges. *See e.g. Cummings v. United States,* 84 Fed. Appx. 603, 605 (6th Cir. 2003).

f. Failure to present the defendant an opportunity to review the pre-sentence report prior to sentencing.

Petitioner next contends that trial counsel was ineffective for failing to afford him an opportunity to review the pre-sentence investigation report prior to sentencing.

At the time of sentencing, defense counsel indicated that he had reviewed the pre-sentence investigation report with petitioner and indicated that there were no corrections or additions. (Tr. 11/28/2005, pp. 2-3). After defense counsel argued for leniency on the ground that this case was basically a shoplifting case that had gone "south", the trial judge asked petitioner if there was anything he would like to add. Petitioner indicated that he was sorry for what had happened but did not complain to the judge that he had not had an opportunity to review the pre-sentence report. (*Id.,* pp. 4-6).

In an event, any error by a defense counsel in failing to read and review a pre-sentence investigation report with a defendant prior to sentencing does not constitute ineffective assistance of counsel in the absence of any indication that the outcome of the sentencing would have been different. *See United States v. Bartholomew,* 974 F. 2d 39, 42 (5th Cir. 1992). *See also Siebert v. Jackson*, 205 F. Supp. 2d 727, 734-35 (E.D. Mich. 2002). Petitioner has failed to show how he was prejudiced by counsel's

24

alleged failure to review the pre-sentence investigation report with him, in that he has failed to offer any argument as to how his sentence would have been different. Petitioner is not entitled to habeas relief on this claim.

g.  Failure to communicate with petitioner.

Petitioner next claims that counsel failed to correspond with or visit him during the pendency of the case, other than to attempt to persuade him to accept a plea bargain.

In this case, trial counsel's alleged failure to consult with petitioner did not prejudice him, and thus could not amount to ineffective assistance, even if counsel allegedly met with petitioner only to discuss the plea bargain, because petitioner has failed to offer any arguments or otherwise show how additional consultation with his counsel could have altered the outcome of the trial. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003).  The mere fact that petitioner's trial counsel may have spent little time with him is not enough under *Strickland* to establish ineffective assistance of counsel, without evidence of prejudice or other defects. *Id.*

h.  Failure to obtain a private investigator.

Petitioner next contends that trial counsel was ineffective for failing to request that the trial court appoint a private investigator to investigate the case.

In the absence of a showing of prejudice, defense counsel's failure to retain a private investigator does not constitute ineffective assistance. *See Linnen v. Poole,* 689 F.Supp.2d 501, 532 (W.D.N.Y. 2010).  Petitioner has failed to offer any argument as to what type of exculpatory information could have been uncovered by a private investigator.  Accordingly, he is not entitled to habeas relief on this claim.

25

i.  Failure to challenge the amendment of the criminal information.

In his fourth claim, petitioner contends that the trial judge improperly permitted the prosecutor to amend the information on the day of trial concerning the carrying a dangerous weapon with unlawful intent charge.  Petitioner further contends that trial counsel was ineffective for failing to object to the amendment and that appellate counsel was ineffective for failing to raise this claim on direct appeal.

The information originally charged that petitioner violated M.C.L.A. 750.226 by going "armed with a razor and/or a knife having a blade over three inches in length." On the day of trial, the prosecutor was permitted to amend the charge to remove the reference to a blade of over three inches in length and to add a reference to the "other dangerous ... weapon" portion of the statute.

On direct appeal, in the context of addressing petitioner's claim involving the improper bindover on the carrying a dangerous weapon charge, the Michigan Court of Appeals indicated that it was proper for the prosecutor to amend the information and that petitioner had failed to argue that he was prejudiced by the amendment. *People v. Edwards,* No. 267212, Slip. Op. at * 3.  On post-conviction review, the trial judge again rejected petitioner's claim, ruling that it was proper for the prosecution to amend the information. *People v. Edwards*, No. 05-025985-FC, Slip. Op. at * 3.

M.C.L.A. 750.226 provides:

> Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years or by a fine of not more than 2,500 dollars.

26

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F. 2d 636, 639 (6th Cir. 1986); *Dell v. Straub,* 194 F. Supp. 2d at 653-54. "When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008)(citing *Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988)).

Petitioner is unable to show that he was surprised by the amendment of the information or that he was prejudiced in his ability to defend himself at trial. Petitioner

27

was already charged with armed robbery and carrying a dangerous weapon with unlawful intent.  The information originally charged petitioner with violating M.C.L.A. 750.226 by going armed with a razor and/or knife having a blade of over three inches in length.  When the prosecutor discovered that the knife/razor combination did not exceed three inches in length, the prosecutor was permitted to amend the information to add a reference to petitioner carrying an "other dangerous weapon".  The only difference between the original carrying a dangerous weapon charge and the amended charge was that the prosecutor did not have to show that the blade that petitioner was carrying was over three inches in length, although he would still be required to show that the knife was a dangerous weapon.  Petitioner's defense at trial was that no robbery had taken place because he had already taken the property at the time that he displayed the knife/razor combination to store security.  Because petitioner's defense to this charge would have been the same regardless of whether he had been charged with possessing a knife or razor that was over three inches in length or with possessing any other dangerous weapon, petitioner is unable to establish that he was surprised or prejudiced by the amendment to the information.

Petitioner is not entitled to habeas relief on his fourth claim.  Moreover, because petitioner has failed to show that he was prejudiced by the amendment to the information, petitioner is unable to establish that counsel was ineffective for failing to challenge the amendment of the information at trial or on direct appeal. *See Olden v. U.S.,* 224 F.3d 561, 567 (6th Cir. 2000)(counsel's failure to challenge indictment for variance was not ineffective assistance of counsel, where defendant did not establish prejudice from any purported variance).

28

j.  Failure to view security cameras in the mall or to subpoena the mall clerks.

Petitioner next contends that trial counsel was ineffective for failing to subpoena any mall clerks or to view videotapes of the security cameras from the shopping mall or the parking lot, claiming that the outcome of the case would have been different had counsel done so.

Petitioner has offered no argument as to how any of this evidence would exculpate him of the crime.  A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his or her defense. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002).  Petitioner cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct a minimal investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002).

k.  Failure to prepare petitioner for the witness stand.

Petitioner lastly contends that trial counsel was ineffective for failing to prepare petitioner to testify on his own behalf at trial.

Any claim that counsel failed to prepare petitioner to testify fails, because petitioner does not explain what testimony that he would have presented had he been prepared more effectively by his defense counsel or how that testimony would have differed materially from the evidence that the jury did consider. *See Hill v. Mitchell,* 140

29

Fed. Appx. 597, 598 (6th Cir. 2005).

    l.  Ineffective assistance of appellate counsel.

    In his first claim, petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal his ineffective assistance of trial counsel claims and his claims involving the validity of the fourth habitual offender charge and the amendment of the information.

    This Court has already determined that the petitioner's second, third, fourth claims are meritless.  The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *See also Harris v. Stegall*, 157 F. Supp. 2d 743, 747 (E.D. Mich. 2001).  However, "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(*quoting Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner has therefore failed to show that appellate counsel was ineffective for failing to raise these claims on his appeal of right.  Petitioner is not entitled to habeas relief on his first claim.

## IV.  Conclusion

    The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented

were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

31

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas

Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner shall be granted leave to appeal *in forma*

*pauperis*.

Dated:  February 14, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys
of record on
February 14, 2012, by electronic and/or ordinary
mail and also to Willie Edwards at Gus Harrison
Correctional Facility, 2727 East Beecher Street,
Adrian, MI 48221.

s/Josephine Chaffee
Deputy Clerk
